[39 NYS3d 10]

2138747 Ontario, Inc., Appellant, v Samsung C&T Corporation et al., Respondents.

First Department, October 11, 2016

**OPINION OF THE COURT**

GISCHE, J.

On this appeal, we are called upon to decide whether a broadly drawn contractual choice-of-law provision, that provides for the agreement to be "governed by, construed and enforced" in accordance with New York law, precludes the application of New York's borrowing statute (CPLR 202). We find that it does not. Where, as here, the plaintiff is a nonresident, alleging an economic claim that took place outside of New York, the time limitations provisions in the borrowing statute apply, regardless of whether the parties' contractual choice-of-law agreement can be broadly construed to include the application of New York's procedural as well as its substantive law. Pursuant to New York's borrowing statute, the time within which plaintiff had to commence this action was the shorter of either Ontario's or New York's statute of limitations. Since this action would be untimely under Ontario's two-year statute of limita-

tions, even though it would be timely under New York's domestic, six-year statute of limitations, the trial court correctly dismissed the action as time-barred. Contrary to plaintiff's argument, the recent Court of Appeals decision in *Ministers & Missionaries Benefit Bd. v Snow* (26 NY3d 466 [2015]) does not prohibit the application of the borrowing statute, nor does it support applying New York's domestic, six-year statute of limitations to the parties' dispute in this case.

Plaintiff is incorporated under the law of the Province of Ontario, Canada, and is a creditor of SkyPower Corp., a Canadian renewable energy developer. SkyPower filed for bankruptcy in August 2009, and by Canadian court order dated October 27, 2014, the bankruptcy trustee assigned to plaintiff all of SkyPower's claims made against the defendants in this action. Plaintiff seeks damages in connection with the alleged breach of a nondisclosure and confidentiality agreement (NDA), dated September 26, 2008, between SkyPower and defendants, who were potential investors. No transaction ever materialized and, pursuant to the NDA, defendants were obligated to destroy certain proprietary information that SkyPower had provided. It is alleged, however, that in violation of the NDA, defendants used the confidential information to enter into a secret memorandum of understanding with the Ontario government, in December 2008, for the development of a renewable energy project. It is alleged further that SkyPower first learned of this breach in January 2010, when defendants' agreement with the Ontario government was made public. This action was commenced in October 2014.

New York's general statute of limitations for a breach of contract action is six years (CPLR 213 [2]). The Ontario equivalent limitations period is only two years (Ontario Limitations Act, 2002, SO 2002, ch 24, schedule B, § 4). CPLR 202, New York's borrowing statute, provides as follows:

> "An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply."

Thus, the law of New York requires that when a nonresident sues on a cause of action accruing outside of New York, the

cause of action must be timely under the limitations period of both New York and the jurisdiction where the cause of action accrued (*Global Fin. Corp. v Triarc Corp.*, 93 NY2d 525, 528 [1999]). This statute has remained substantially unchanged since 1902 (*id.* at 528). Its underlying purpose is to prevent forum shopping by nonresident plaintiffs who come to New York, seeking to take advantage of a more favorable statute of limitations than that which is available to them elsewhere (*see Norex Petroleum Ltd. v Blavatnik*, 23 NY3d 665, 678 [2014]; *Insurance Co. of N. Am. v ABB Power Generation*, 91 NY2d 180, 186 [1997]). The borrowing statute incorporates express terms of preferential treatment for New York's own residents (CPLR 202).

The NDA at issue contains the following choice-of-law provision:

> "This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of New York. You hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the courts of the State of New York and of the United States District Courts located in the County of New York for any lawsuits, actions or other proceedings arising out of or relating to this Agreement and agree not to commence any such lawsuit, actions or other proceeding except in such courts . . . You hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, action or other proceeding arising out of or relating to this Agreement in the courts of the State of New York or the United States District Courts located in the County of New York, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in any such court that any such lawsuit, action or other proceeding brought in any such court has been brought in an inconvenient forum. Any right to trial by jury with respect to any lawsuit, claim or other claim arising out of or relating to this Agreement is expressly and irrevocably waived."

Plaintiff argues that the language of the choice-of-law provision in the NDA is extremely broad, reflecting the parties' intent to apply both New York substantive and procedural law. It further posits that by choosing New York law to resolve any

dispute related to the NDA, all parties anticipated that they would also be subject to this State's domestic, six-year statute of limitations. Plaintiff argues that application of CPLR 202 defeats the parties' purpose in choosing the law to be applied.

Typically, choice-of-law provisions are construed to apply only to substantive law issues. Statutes of limitations, however, have long been considered part of New York's procedural law because "they are deemed 'as pertaining to the remedy rather than the right' " (*Portfolio Recovery Assoc., LLC v King*, 14 NY3d 410, 416 [2010]). In *Tanges v Heidelberg N. Am.* (93 NY2d 48, 55 [1999]), the Court of Appeals, quoting Siegel, NY Prac § 34 at 38 (2d ed), explained New York's procedural characterization of statutes of limitation as follows: "[T]he theory of the statute of limitations generally followed in New York is that the passing of the applicable period does not wipe out the substantive right; it merely suspends the remedy." The borrowing statute is considered a statute of limitations provision and not a choice-of-law provision. In referring to the borrowing statute the Court of Appeals observed: "[T]here is a significant difference between a choice-of-law question . . . and this Statute of Limitations issue, which is governed by particular terms of the CPLR" (*Global Fin. Corp. v Triarc Corp.*, 93 NY2d at 528). Consistent with these principles, case law generally holds that a contractual choice-of-law provision does not bar the application of New York's borrowing statute (*see Portfolio Recovery Assoc., LLC v King*; *Insurance Co. of N. Am.*, 91 NY2d at 187; *Matter of Smith Barney, Harris Upham & Co. v Luckie*, 85 NY2d 193, 202 [1995]).

We do not find support for plaintiff's argument that where a contractual choice-of-law provision is broad enough to include the application of both substantive and procedural New York law, the borrowing statute does not apply. Preliminarily, we note that the NDA choice-of-law provision in this case does not expressly provide that the parties agree only to apply New York's six-year statute of limitations to their contract-based disputes. In this regard, there is no need to resolve whether such a provision would be an unenforceable extension of the otherwise applicable statute of limitations (*see John J. Kassner & Co. v City of New York*, 46 NY2d 544 [1979]). We do agree with plaintiff's argument, that the language of the choice-of-law provision in this NDA, and in particular the use of the word "enforcement," is broad and should be interpreted as reflecting the parties' intent to apply both the substantive and

procedural law of New York State to their disputes (*Luckie*, 85 NY2d 193, 202).

But even this broad reading of the NDA choice-of-law clause does not require that the borrowing statute be ignored in favor of New York's domestic, six-year statute of limitations. The borrowing statute is itself a part of New York's procedural law and is a statute of limitations in its own right, existing as a separate procedural rule within the rules of our domestic civil practice, addressing limitations of time (*see Global Fin. Corp. v Triarc Corp.* at 528; *see also Norex Petroleum Ltd.*, 23 NY3d 665, 679 [an action timely commenced under New York's borrowing statute may take advantage of New York's savings statute]). Thus, applying the borrowing statute is perfectly consistent with a broad choice-of-law contract clause that requires New York procedural rules to apply to the parties' disputes.

*Luckie* illustrates this point. In *Luckie*, the Court of Appeals was faced with an issue of whether the parties' arbitration agreements, which all expressly provided that New York law would govern "the agreement and its enforcement," were preempted by the Federal Arbitration Act. This informed the issue of whether an arbitrator or a court of law would determine whether the claims were timely commenced. In finding no preemption, the Court implicitly recognized that the choice-of-law provisions in the arbitration agreements were broad enough to allow the New York courts to determine the procedural statute of limitations issues in accordance with New York law. The Court of Appeals expressly acknowledged that the New York courts must apply the same period of limitations in arbitration that would govern if an action were brought on the claim being arbitrated (*id*. at 207). The matter was then remitted for consideration of the applicability of the borrowing statute. The Court of Appeals did not hold, as plaintiff urges us to do here, that as a matter of law a choice-of-law provision broad enough to include New York's procedural law requires abandonment of the borrowing statute. In fact, by remitting the matter, the Court of Appeals was accepting that the borrowing statute could apply, notwithstanding a broad choice-of-law contractual provision (*see Norex Petroleum Ltd.*, 23 NY3d at 675 [extensively discussing *Luckie*, the Court of Appeals observed that remitting the matter on the issue of the borrowing statute entailed consideration of the extensions and tolls in the foreign jurisdiction when applying the borrowing statute;

implicitly acknowledging that the borrowing statute could otherwise apply to bar an action as untimely]).

Recent decisions by the Court of Appeals in *Ministers & Missionaries* and *IRB-Brasil Resseguros, S.A. v Inepar Invs., S.A.* (20 NY3d 310 [2012], *cert denied* 569 US —, 133 S Ct 2396 [2013]), do not change this result. Neither of those cases stands for the legal proposition, or even suggests, that a New York court should disregard the borrowing statute where there is a broad contractual choice-of-law provision in the parties' agreement.

In *IRB-Brasil Resseguros*, the Court of Appeals clarified that where there is a choice-of-law provision in a commercial contract exceeding $250,000, there is to be no analysis under New York's conflict-of-laws rules (*IRB-Brasil Resseguros* at 315-316). Although such contracts are governed by the General Obligations Law, before *IRB* some courts continued to apply a traditional conflicts-of-law analysis, despite the express statutory exception allowing parties to choose New York law to govern their contracts, even if they do not have New York contacts (General Obligations Law §§ 5-1401 [1]; 5-1402 [1]; *IRB-Brasil Resseguros*, 20 NY3d at 314). *IRB* made it clear that this analysis was impermissible.

In *Ministers & Missionaries*, the Court of Appeals expanded *IRB*, by clarifying that New York courts are also prohibited from engaging in a conflict-of-law analysis where the parties include a choice-of-law provision in their contract, even if the contract does not fall within General Obligations Law § 5-1401 (*Ministers & Missionaries*, 26 NY3d at 468, 474-475). *Ministers & Missionaries* involved application of New York's Estates, Powers and Trusts Law,* which the Court of Appeals expressly characterized as a "statutory choice-of-law directive" (*id.* at 470-471). Because the Court equated the statute with common-law choice-of-law principles, it held that the contract's choice-of-law provision precluded its application.

Consistent with those cases, we agree that the NDA choice-of-law provision prohibits a conflict-of-law analysis in this case. The borrowing statute, however, is not and has never been considered a statutory choice-of-law directive. It is a statute of

---

* EPTL 3-5.1 (b) (2) provides that the "intrinsic validity, effect, revocation or alteration of a testamentary disposition of personal property, and the manner in which such property devolves when not disposed of by will, are determined by the law of the jurisdiction in which the decedent was domiciled at death."

limitations. It is for this reason that our analysis is perfectly consistent with this recent Court of Appeals precedent.

We also reject plaintiff's alternative argument, that even if the New York borrowing statute applies, requiring application of Ontario law, Ontario law mandates application of New York's six-year statute of limitations because the parties have chosen New York law. It does not require that we apply the borrowing statute of a foreign jurisdiction (*Insurance Co. of N. Am.* at 187). CPLR 202 only concerns statutes of limitations, it does not require that we consider the foreign jurisdiction's borrowing law. We recognize that plaintiff raises some valid policy issues in favor of its position that the borrowing statute should not be applied in this case, including that it is inconsistent with New York's current policy to encourage businesses to use New York courts as their forum for dispute resolution and also that the salutary purpose of the borrowing statute, the avoidance of forum shopping, is satisfied by the parties' agreement to have their disputes decided according to New York law. These policy issues, however, and any perceived conflict with the long-established policy underlying the borrowing statute, are best left to the state legislature to resolve.

Accordingly, the order of the Supreme Court, New York County (Jeffrey K. Oing, J.), entered October 8, 2015, which, to the extent appealed from as limited by the briefs, granted defendants' motion to dismiss as time-barred the claims assigned by SkyPower Corp. to plaintiff, should be affirmed, with costs.

MAZZARELLI, J.P., ANDRIAS, SAXE and KAHN, JJ., concur.

Order, Supreme Court, New York County, entered October 8, 2015, affirmed, with costs.